## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

**LARRY W. STEPHENS,**
**ADC # 103706**                                                                      **PLAINTIFF**

**V.**                                        **CASE NO. 2:17-CV-143-JM-BD**

**DOES,** *et al.*                                                                   **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge

James Moody Jr. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14

days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without

independently reviewing the record. By not objecting, the parties may also waive any

right to appeal questions of fact.

**II.    Discussion:**

A.    Background

Plaintiff Larry W. Stephens, an Arkansas Department of Correction ("ADC")

inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket

entries #1, #4) Mr. Stephens claims that he has been exposed to raw sewage in his cell at

the East Arkansas Maximum Unit since his arrival there on June 19, 2017, and that his

1

cell was not adequately sanitized after the sewage leak. (#29) He also alleges that he was not able to shower from June 27, 2017 to August 14, 2017 and, therefore, could not clean the sewage from his body. He alleges that the filth resulted in health problems.[1] (#29)

Mr. Stephens is proceeding with claims against Defendants Lester Allen, Tyrone Allison, Jeremy Andrews, Seccer Cole, James Dycus, Amanda Granger, Wendy Kelley, David Knott, Danny Norment, M.D. Reed, Valerie Westbrook, and Franklin Graham ("Defendants").[2]

Defendants have moved for summary judgment based on a failure to exhaust administrative remedies prior to filing suit. (#170) Mr. Stephens has responded to the motion, alleging that he was thwarted from exhausting administrative remedies. (#186, #190)

B.    Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any fact important to the outcome of the lawsuit. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). If important facts remain in dispute, the court cannot grant summary judgment, and the case is set for a trial.

---

[1] All other claims have been dismissed. (#34)

[2] The Clerk of the Court is directed to update the name of Defendants Danny Morment to "Danny Norment"; Graham to "Franklin Graham"; and Dale Reed to M.D. Reed. *See* Notice of Appearance (#135).

C.    Exhaustion

The Court must dismiss any claim that was not fully exhausted prior to filing a civil lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

There are exceptions to the exhaustion requirement, but they are few in number and narrow in scope. For example, an inmate's subjective belief about futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. See *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

That said, the law only requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). The availability of a remedy, according to the Supreme Court, is about more than just whether an administrative procedure is "on the books." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). An administrative remedy is "not capable of use," and therefore unavailable, for example, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60. A self-serving affidavit, however, is not insufficient to

show that he has exhausted his administrative remedies with respect to the grievance that is the subject of a complaint. See *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010).

D.     Discussion

On August 23, 2017, the date that Mr. Stephens filed his complaint, Administrative Directive ("AD") 14-16 was in effect. (#172 at 4) Under AD 14-16, inmates must fully exhaust their administrative remedies as to all defendants before filing a lawsuit under § 1983 lawsuit. (*Id.*)

To fully exhaust, inmates must first file a unit-level grievance form within fifteen days of the incident. (#170-1 at 5) The unit-level form must contain a statement that "is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at 5-6) This form is to be presented to a designated problem-solver or to any staff member holding the rank of sergeant or above. (*Id.* at 6)

Upon receipt of the unit-level grievance, the staff member must sign and date the form. (*Id.*) If the problem cannot be resolved, the resolution attempt must be documented on the form. (*Id.* at 7) To continue the exhaustion process, the inmate must proceed to step two, using the same form, within three days of receipt of the step one response. (*Id.* at 7-8)

At step two, the inmate must explain why the informal resolution was unsuccessful. (*Id.* at 8) Upon receipt, the grievance officer transmits an acknowledgement or rejection within five working days. (*Id.* at 9) If an inmate has not received a response

within twenty days, he may move to the next level of the process by appealing to the chief deputy/deputy/assistant director within five working days. (*Id.* at 10)

If an inmate receives a response from the warden and the inmate is not satisfied with that response, he may file an appeal within five working days to the chief deputy/deputy/assistant director. (*Id.*) The chief deputy/deputy/assistant director is to attempt a resolution of the matter in writing within thirty working days, unless there was an extension or unless the appeal is rejected. (*Id.* at p. 12) A written decision or rejection of an appeal at this level is the end of the grievance proces*s*. (*Id.*)

Here, the Defendants attach the affidavit of Terri Grigsby, an Inmate Grievance Supervisor for the ADC, in support of their motion. (#170-2) Mrs. Grigsby testifies that Mr. Stephens did not fully exhaust any of his grievances against the Defendants regarding the issues in this lawsuit before filing his complaint on August 23, 2017. (*Id.*)

According to the record, on July 6, 2017, Mr. Stephens submitted an informal grievance (EAM-17-01680) naming J. Andrews, Dycus, Wendy Kelley, David Knott, Cpt., Lt, and Does, complaining of problems with sewage flooding his cell. (#170-4) This grievance was exhausted on September 11, 2017, two weeks after he filed the complaint in this case on August 23, 2017.  (*Id.*)

On July 20, 2017, Mr. Stephens submitted an informal grievance (EAM-17-01766) naming J. Andrews, Dycus, W. Kelley, Knott, and Does. In that grievance, he complained of a toxic environment in isolation cells, which was causing him to suffer severe headaches, stomach-related issues, and other health problems. (#170-5) This grievance was not exhausted until September 19, 2017, almost one month after he filed

his complaint. (*Id.*)

On July 20, 2017, Mr. Stephens filed another informal grievance (EAM-17-01767) naming J. Andrews, Dycus, Knott, Wendy Kelley, Allen, Allison and Does. In that grievance, Mr. Stephens complained that these officers had not provided clean, safe and sanitary cells. He again complained of headaches, stomach issues, and other health problems. (#170-6) The Deputy Warden reviewed the grievance and denied the appeal because it was duplicative of EAM-17-01766. (*Id.*) Mr. Stephens appealed to Deputy Director Reed, arguing that the grievance was not duplicative. (*Id.*) On August 21, 2017, Deputy Director Reed responded that the appeal was "without merit" because Mr. Stephens "previously grieved the same issues in EAM-17-01766." (*Id.*) The Defendants attached the affidavit of Deputy Director Reed, who testifies that he denied Mr. Stephen's appeal of grievance EAM-17-01767 because it was duplicative. (#170-3) Because grievance EAM-17-01767 was rejected based on his failure to abide by ADC grievance policy rather than on the merits, this grievance was not fully exhausted.

The other grievances Mr. Stephens submitted prior to the filing the complaint in this case were unrelated to the issues he raises here: EAM-17-01690 (complaining about a disciplinary matter); EAM-17-01572 (complaining about a classification issue); EAM-17-01596 (complaining about medical restrictions); EAM-17-01833 (complaining about a grievance process issue);  EAM-17-01952 (complaining about a document falsification issue); EAM-17-01975 (complaining about lack of a wheelchair); and EAM-17-02048 (complaining about lack of access to the courts). (#170-2)

Mr. Stephens argues that he should be excused from the exhaustion requirement here because he was "in a life and death situation." (#186 at 2) The Prison Litigation Reform Act requires prisoners to exhaust and obligates the Court to dismiss any claim raised that was not fully exhausted prior to the date a civil lawsuit was filed under 42 U.S.C. § 1983. If Mr. Stephens was facing a life and death situation, he could have submitted an emergency grievance, and the ADC would have been required to take corrective action within twenty-four hours. (#170-1 at 6)

Mr. Stephens also argues that he was thwarted from exhausting his administrative remedies. He offers no proof of this assertion. Mr. Stephens alleges that four grievances were lost, but he does not produce any copies of the lost grievances. The ADC policy clearly states that inmates should retain a copy of a grievance once it is initially signed and dated by a staff member. (#170-1 at 6) Mr. Stephens cannot create a question of fact by simply alleging some of his grievances were lost, without producing some evidence to rebut the Defendants' evidence; for example, a copy of the grievance he alleges was lost by the ADC.

Mr. Stephens also asserts that he failed to receive timely responses to his grievances. Even if this is true, that fact does not excuse a failure to fully exhaust administrative remedies. The ADC grievance policy allows inmates to proceed to the next step if there is no response within the time allowed by the policy. Therefore, an untimely response did not affect Mr. Stephens's ability and obligation to fully exhaust his administrative remedies prior to filing a lawsuit.

7

Mr. Stephens has not come forward with any credible evidence to support his argument that he was thwarted in exhausting his administrative remedies.  Accordingly, summary judgment in favor of the Defendants is appropriate.

**III.    <u>Conclusion</u>:**

The Court recommends that Defendants' motion for summary judgment on the issue of exhaustion (#170) be GRANTED; and that all pending motions (#152, #160, #162, #163, #168, #169, #175, #176, #177, #178, #179, #183) be DENIED, as moot. This lawsuit should be DISMISSED, without prejudice.

DATED this 1st day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE